IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal No. 3:21CR0054 |
| ) | |
| SHADONTA LATEEF BEANE,   ) | |
| Defendant.   ) | |

## POSITION ON SENTENCING

COMES NOW the Defendant, by counsel, in accordance with Federal Sentencing Guidelines Manual §6A1.2 (2011) and the Sentencing Procedures Order, and represents that he has reviewed the Presentencing Investigation Report ("PSR") prepared by the Department of Probation and Parole dated May 12, 2022 together with the revision dated July 13, 2022.  No objections were noted to the PSR.

Defendant believes he is entitled to a third point for acceptance under U.S.S.G. § 3E1.1 (b) based on his prompt and continued cooperation with the United States in the prosecution of this case.  He entered a guilty plea proposed by the United States to address his illegal activity.  He spared the United States the expense and time of a trial.  He has accepted full responsibility for his actions.  For these reasons, Defendant asserts that his proper offense level with all enhancements and deductions is 25, and he agrees that his criminal history category VI therefore places him in an advisory guideline range of 110 to 120 months.

Counsel advises that he will request a downward variance from this sentencing range for the following reasons:

1

1. **OVERSTATED CRIMINAL HISTORY**

As contemplated in the Sentencing Guidelines Manual at §4A1.3, a downward departure from the criminal history Category VI could be justified based on the number and range of convictions. Defendant received a total of 9 points for driving after his license was suspended, for each of which he received nominal jail sentences as well as provisions for good behavior. He had a total of 13 points for criminal history (the lowest threshold for Category VI), and 69% of those points were for status offenses related to not having an operators license. All but two of those points were for offenses that occurred before 2019 when the legislature banned license suspensions only on failure to pay fines and costs. This followed a widespread effort by organizations such as the Virginia Legal Aid Justice Center to point out the serious effect that license suspensions had before 2019 on low-income citizens such as Defendant.[1]

In fact, Defendant's first conviction for driving on a suspended license dates back to 2013, at the age of 17, and there were no convictions before that time indicating his license would have been suspended for any other reason than failure to pay fines and costs. There are no reckless driving, DUI, or other traffic offenses which would cause an administrative suspension. His license was first suspended for that reason in 2014 for only 90 days, and again for that length of time in 2014 though he receive no points for those offenses. Over the years beginning at age 17, Defendant is sentenced to pay fines and costs and then in a cycle of suspended license status, implicating his ability to work outside his immediate neighborhood.

In the event that the Court considers this mitigating information about Defendant's overstated criminal history, a reasonable modification would be to remove the 7 points for driving

---

[1] See, e.g., Lawsuit Challenges Virginia's License Suspension Policy - Legal Aid Justice Center (justice4all.org)

offenses that occurred before 2019. This would then cause him to be a Category III, and the range would then be 70 to 87 months.

## 2. NATURE AND CHARACTER OF DEFENDANT

Defendant has accepted responsibility for his actions, and concedes that the practice of possessing firearms after having been banned from doing so is dangerous both for himself and the community at large. However, it is worth pointing out that his upbringing exposed him to criminal activity. He first used marijuana at age 11. His father was convicted of serious sex offenses during Defendant's teen years and has additional pending charges for narcotics at this time. Defendant's mother appears to have attempted to raise a total of seven children by herself with the backdrop of a co-parent who was committing sex offenses and going to prison. Several of Defendant's siblings have significant criminal records, and at least two are currently incarcerated. As for Defendant, his first contact with the criminal justice system was at age 14; he was committed to the Department of Juvenile Justice at age 16 and had ongoing bouts of probation/parole combined with arrests on new offenses.

Defendant enjoys a relationship with his 5 year old daughter, and is reported to be an "active father" who assists his child with her needs. Extended incarceration will be a hardship upon the minor child as well as her mother, who no longer has the coparenting assistance she had when Defendant was at liberty.

Despite this marginalized upbringing, Defendant graduated from high school and had multiple jobs at various locations, demonstrating his ability to perform labor and even commit to a non-profit whose goal was to serve underprivileged youth. He has learned He remains a young man, only 26 years old, and could have a successful life ahead of him if he commits to a trade and refraining from illegal activity.

3. **NATURE OF THE OFFENSE**

As mentioned, Defendant has accepted responsibility for the allegations in Count One of the indictment, relating to illegal possession of a firearm on October 1, 2020. On that date, Defendant sold a firearm to a confidential source operating under the direction of federal authorities. The CS informed the Defendant that he wished to buy the gun so that he could resell it to others, not commit acts of violence. It is worth noting that this firearm was <u>not</u> stolen; the relevant conduct for which Defendant is attributed with +2 points on page 23 of the PSR related to Count Two of the indictment. However, Defendant fully acknowledges that the practice of possessing firearms with his felon status, let alone engaging in transfer or sale of firearms whether they are stolen or not, is an offense which threatens the safety and security of the citizens of the Eastern District.

It is worth noting that after this controlled buy of a weapon from Defendant on October 1, 2020, federal authorities <u>did not</u> arrest Defendant. They clearly did not deem him to be a danger to the community, as they waited until November 17, 2020, to perform yet another sale. They did not deem him to be a danger to the community after that second sale, as he remained in the community and was then involved in a shooting on November 19, 2020 and was arrested on outstanding warrants from the state charges.

**<u>CONCLUSION</u>**

Defendant will argue these factors and further mitigation at his sentencing on July 27, 2022 at 1:00 before this Honorable Court.

                                                   SHADONTA LATEEF BEANE
                                                   By Counsel

                                                   _____/s/_____

>Emily M. Munn, Esquire
>VSB No. 46390
>Emily M. Munn, P.C.
>223 East City Hall Avenue
>Norfolk, Virginia 23510
>emily@emilymunn.law

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July 2022, I served a true copy of the foregoing via the CM/ECF system which shall provide notice to all counsel of record. Additionally, I have provided a copy via electronic mail to the following non-ECF user:

Diane C. DeLuca, United States Probation Officer

>_____/s/_____
>Emily M. Munn, Esquire
>VSB No. 46390
>Emily M. Munn, P.C.
>223 East City Hall Avenue
>Norfolk, Virginia 23510
>emily@emilymunn.law