IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 3:22cr-054-001-DJN |
| | ) | |
| SHADONTA LATEEF BEANE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

<u>SENTENCING POSITON OF THE UNITED STATES</u>

The United States of America, by and through its attorneys, Jessica D. Aber, United States

Attorney for the Eastern District of Virginia, and Angela Mastandrea-Miller, Assistant United

States Attorney, hereby submits its position with respect to the sentencing of defendant

SHADONTA LATEEF BEANE.

The United States concurs with the Probation Officer's determination that the defendant

has a total offense level of 25 and a criminal history category of VI, resulting in an advisory

guideline range of 110 to 137 months' imprisonment, and a restricted guideline range of 110 to

120 months' incarceration, with a statutory maximum sentence of 120 months.

For all the reasons set forth herein, the United States respectfully asks this Court to impose

a sentence within the advisory guideline range, specifically, 120 months' incarceration followed

by 3 years of supervised release. The United States specifically recommends to this Court the

imposition of a term of incarceration of 120 months as necessary to adequately address the nature,

circumstances, and seriousness of the defendant's offense; the need to adequately deter the

defendant from engaging in further criminal conduct, the need to promote respect for the law, and

the need to protect the public.  That is, a sentence of 120 months' incarceration is necessary in this case to properly reflect the relevant factors in 18 U.S.C. § 3553(a).

As set forth in the Presentence Report (PSR), and as discussed in greater detail here, the defendant was residing in the Northern Neck area of Virginia, specifically in Lancaster County, Virginia prior to his arrest for a shooting that he was involved in at the Raceway Gas Station. BEANE is a member, and one of the leaders, of the Merry Point Boys Gang, a criminal street gang recognized by the Department of Corrections as such. The Merry Point Boys (MPB), sometimes referred to as the Merry Point Gang (MPG) are believed to be responsible for numerous acts of violence and drug trafficking in the Northern Neck. Their criminal activities include shootings (including drive-by shootings), assaults, murder, threats and intimidation against witnesses or potential witnesses, armed robberies, and other violent crimes.

A letter, signed by **ten** Commonwealth's Attorneys and Sheriffs in Essex, Lancaster, Middlesex, Northumberland, and Westmoreland Counties, sought federal assistance from the United States Attorney's Office, the FBI and the ATF to disrupt and dismantle the Merry Point Gang that was, in their words, "terrorizing the community." A copy of this letter, dated September 25, 2020, will be filed UNDER SEAL with the Court. A copy of the letter was previously shown to counsel for the defendant.

During their investigation, state and federal law enforcement agents identified Shadonta Beane (hereafter, the defendant) as one of the leaders of the Merry Point Gang. The investigation that began  months earlier intensified, culminating in the purchase of two firearms (one high capacity, one stolen) from the defendant.

<u>Defendant Possesses and Sells a Draco and a 30 Round Magazine on October 1, 2020</u>:

The first firearm possessed and sold by the defendant, which is described in greater detail in Count One of the Indictment, and to which the defendant pled guilty to possessing, is a Romarm/Cugir Mini Draco Pistol, with a 30-round magazine and 22 rounds of ammunition. Significantly, and not considered by the guidelines, the defendant subsequently aided one of his relatives in falsely reporting the Draco firearm as stolen. Specifically, after the firearm was already in the custody of the FBI on October 1, 2020, the defendant's aunt, who was the original purchaser of the firearm, contacted the police and reported that, on October 3, 2020, the firearm had been stolen from her vehicle while she was at a party (see PSR at p. 5, paragraphs 11-13). The problem is that the date that the defendant' aunt stated it had been stolen from her car was *after* it had already been possessed by the defendant and purchased from the defendant – that is, the firearm that was falsely reported as having been stolen (Count One) was already in the possession of the FBI. When local law enforcement asked the defendant's aunt to produce the serial number for the firearm, the defendant contacted the CI and asked the CI to provide the defendant with the serial number. The CI contacted the FBI and then provided the serial number to the defendant. Shortly thereafter, the defendant's aunt reported this same serial number for the Romarm Mini Draco Pistol to the police.

<u>A Shooting Takes Place at the Raceway Gas Station on October 31, 2020</u>

As noted in the PSR at paragraph 63, the defendant was involved in a shooting that occurred at the Raceway Gas Station in Tappahannock, Virginia. Video surveillance, which was enhanced by the FBI, shows the defendant present and shooting a firearm. Two vehicles were hit multiple times. The defendant was arrested on November 19, 2020, by the Tappahannock Police Department and charged with this crime. See PSR at p. 6, paragraphs 14 and 15.

<u>Defendant Possesses and Sells a Stolen Taurus .40 caliber handgun on November 17, 2020:</u>

On November 17, 2020, the defendant possessed and sold a second firearm, this time a Taurus handgun that had been reported stolen out of Virginia Beach. In addition to the firearm, the defendant also possessed and sold a magazine loaded with 10 rounds of .40 caliber ammunition. The defendant was arrested two days later for the Raceway Gas Station shooting.

The United States will introduce testimony at the sentencing hearing by an FBI agent who will explain to the Court who the Merry Point Gang is, the criminal activities they are engaged in, the defendant's role in the gang, and he will discuss and show photographs and videos of the defendant in possession of firearms, throwing gang signs, evidence of defendant's involvement in drug trafficking, and conversations between the defendant (while incarcerated) and others in which he encourages people who are known convicted felons (some of whom are fellow Merry Point Gang members) to shoot firearms (which they do on video), and he expresses to them that he plans to acquire a similar style firearm upon his release from incarceration.

As the PSR notes, at the time of his arrest for the Raceway Gas Station shooting, the defendant became very upset when he learned his cell phone was seized. He claimed at first that the phone belonged to his girlfriend, then told the agents to "break it" if they wanted to get into it. Shortly thereafter, he told his mother to contact a friend and have that friend log into the defendant's Verizon account and wipe the phone clean, stating that the friend knows his log in and pin numbers. See PSR at paragraph 15.

The defendant, who is now 26 years old, has been arrested and convicted 21 times in the last 12 years, not counting the arrest that brought him before this Court. His adjudications and convictions include:

4

- Felon in Possession of Stolen Property;

- Unauthorized Use;

- Grand Larceny;

- Obstruction of Justice;

- Profane language over the airways;

- Point and brandishing a firearm;

- Obstruction of Justice;

- Assault;

- Obstruction of Justice with Threats/force;

- Obstruction of Justice;

- Drug distribution (x2);

- Felon in Possession of a Firearm (Raceway Gas Station shooting);

- Felony Drug Possession

In addition to the above convictions, which have been escalating in terms of their brazenness and severity since the defendant became an adult, he has also amassed 17 separate driving convictions. The defendant was assessed *zero* criminal history points for 11 of these convictions. That is, just six of his 17 driving convictions had criminal history points assessed. The dates that his driving convictions were incurred is also telling in terms of his disregard for the law. They occurred on: March 8, 2014; May 27, 2014; June 4, 2014; July 8, 2014; April 9, 2015; July 19, 2015; February 9, 2016; March 16, 2016; April 10, 2016; September 8, 2016; April 28, 2017; May 21, 2017; August 1, 2020; August 7, 2020; August 10, 2020; October 4, 2020, and October 17, 2020 (note that the defendant was arrested in November 2020). His convictions run the gamut and include convictions on multiple dates for driving under revocation, driving under

suspension, reckless driving, speeding, and failure to appear. He received 8 criminal history points

for six separate incidents, with the most recent conviction for driving under revocation 8+ times.

Because the convictions for which he received criminal history points had a term of incarceration,

the probation officer correctly counted each of them in scoring the defendant's Criminal History

points. The defense is suggesting that these points should be ignored by this Court, but in fact, the

defendant was not assessed points for the majority of his driving convictions and, more important,

the recidivist nature of these convictions unequivocally show this defendant's complete and utter

disregard for the law and for orders of the court. To consider reducing his criminal history category

would send the wrong message to the defendant: that his repeated violations and his thumbing his

nose at the state court's orders does not matter.

## POSITION ON SENTENCING

Federal courts imposing sentence are called upon to engage in a multi-step process,

analyzing both the procedural and substantive contours of sentencing.  The first step in the

process—the procedural concerns—requires that a district court correctly "calculate[] the

defendant's advisory Guidelines range, consider[] the 18 U.S.C. § 3553(a) factors, analyze[] the

arguments presented by the parties, and sufficiently explain[] the selected sentence."  *See United

States v. Hames*, 757 F. App'x 244, 245 (4th Cir. 2018) (citing United *States v. Lynn*, 592 F.3d

572, 575–76 (4th Cir. 2010)).

"Next, the court must 'determine whether a sentence within that range serves the factors

set forth in § 3553(a) and, if not, selects a sentence [within statutory limits] that does serve those

factors.'"  *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (*quoting United

States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006)).  Specifically, Section 3553(a)(1) directs

sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with

6

the purposes set forth in" that section.  These include: (1) the nature and circumstances of the offense, as well as the history and characteristics of the defendant; and (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(D).  In weighing these factors, the Court considers the kinds of sentences available, pertinent policy statements, and the need to avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(3)-(6).

A consideration of each of these factors in this case warrants a sentence of 120 months' incarceration, followed by three years of supervised release.

A.    *Nature, Circumstances, and Seriousness of Offense*

The nature, circumstances, and seriousness of the defendant's offense cannot be overstated.  The defendant was in possession of loaded firearms, one of which had a high capacity 30 round drum and 22 rounds of ammunition, and the other that was loaded with 10 rounds of ammunition and stolen out of Virginia Beach. In between possessing (and selling) these firearms, he shot a firearm at the Raceway Gas Station, hitting two cars in the process. The reckless disregard he has shown, that is the nature, circumstances, and seriousness of the offense that brings him before this Court is simply not adequately reflected by a sentence below or at the lower end of the advisory guidelines.

A loaded firearm in the hands of a convicted felon is problematic for a host of reasons, including the recognized unlawfulness of the possessor.  The current federal regulatory regime for firearms—if properly enforced—assists in keeping guns out of the hands of persons not

legally authorized to possess them without encumbering the Second Amendment rights of law-abiding citizens.  *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008) (recognizing that Second Amendment right to possess firearms does not call into question longstanding prohibitions against possession of a firearm by convicted felons).  When a convicted felon is in possession of a firearm, the regulatory regime's core purpose is thwarted. But the problem is even more pronounced when the possession, as here, involves not just a loaded firearm, but a case where the firing of a gun in a public place without regard for the danger to the members of the community occurred in between his unlawful possession and sale of multiple firearms.  Add to this the fact that the defendant was under a suspended sentence for drug trafficking, is a documented gang member, and one of the leaders of the Merry Point Boys/Gang and was part of a gang that was wreaking havoc throughout the community, the firearms he possessed and sold elevates an already extremely dangerous set of circumstances to new levels. The coalescence of a person with loaded firearm, possessing it, selling it, falsely aiding in reporting it as stolen, recklessly shooting a firearm in the middle of a crowd of people hitting multiple cars, and then possessing and selling yet another loaded, stolen firearm, crystallizes and brings to the forefront the potential for an extraordinarily harmful outcome.  Simply put, this defendant's lawlessness must stop.

When this set of facts is viewed in conjunction with the defendant's significant criminal record (which includes convictions for assault, drug dealing, and firearms possession after being prohibited) it speaks to the need for the imposition of a sentence that will adequately account for the nature, circumstances, and seriousness of his offense, the need to provide adequate deterrence, promote respect for the law, and protect the community. A sentence of 120 months is appropriate and wholly justified in this case.

B.    _History and Characteristics of the Defendant_

At 24 years old, the defendant comes before this Court with a Criminal History Category of VI, based on 13 countable criminal points, plus an additional 2 points added because he was under terms of good behavior. These convictions include:

**Profane Language Over the Airways** Where the defendant was sentenced to 12 months with four months suspended (2 points);

**Point/Brandish a Firearm**:  Where the defendant was sentenced to 12 months incarceration with 8 months suspended (2 points);

**Obstruct Justice; Possession of Marijuana; Driving on Suspended:**  Here the defendant obstructed law enforcement in the performance of their duties, possessed marijuana and drove on a suspended license (third or subsequent). He was sentenced to 60, 30, and 10 days all suspended (1 point);

**Assault:**    The defendant assaulted and battered B.T.L. (see PSR at p. 16, paragraph 51) for which he was sentenced to 30 days with 25 days suspended (1 point);

**Obstruction of Justice with Threats:** Here, the defendant attempted to intimidate or impede a law enforcement officer by threats and force (and was speeding) (1 point);

**Obstruction of Justice:** Here, the defendant again knowingly obstructed a law enforcement officer in the performance of his duties (1 point);

**Distribute, Sell for Profit Schedule I or II Controlled Substances:**  The defendant was convicted of drug distribution and was sentenced to a term of 5 years' incarceration with 2 years and 11 months suspended for 15 years (2017); and he was convicted of a second count of drug distribution and was sentenced to a term of 10 years' incarceration, to run consecutive to the 5

9

years, with the sentence suspended for a period of 15 years conditioned on good behavior. He was placed on indefinite supervised probation. These two convictions were the result of the defendant dealing cocaine on January 23, 2017 and again two days later on January 25, 2017. Strikingly, the defendant was completely undeterred by the prospect of facing 10 years in prison if he did not take the suspended sentence seriously. It is clear that the leniency imposed by the court had absolutely no deterrent effect. That is, the prospect of 10 years in prison did not stop the defendant from committing additional crimes.

While he was on probation, the defendant tested positive for the use of cocaine, and he had a domestic "altercation" with the mother of his child. Notably, there has been a protective order entered against the defendant.

**Felon in Possession of a Gun:**  Even with the prospect of going to prison for ten years hanging over his head, the defendant nonetheless possessed and then discharged a firearm at the Raceway Gas Station in Tappahannock, where two vehicles were hit multiple times. This shooting occurred in between the sale of the two firearms that brings the defendant before this Court. He was sentenced to serve 5 years, with 3 years and 9 months suspended for 5 years.

**Felony Drug Possession:** The defendant was in possession of drugs at the time of his arrest for the Raceway Gas Station shooting. He received a sentence of 2 years with all of the time suspended. He has been under an active term of probation since March 12, 2019, and is currently on probation with District 33.

None of the sentences, or the prospect of a significant sentence, has deterred BEANE from continuing to commit crimes - crimes that have escalated in their severity and brazenness, presenting a significant danger to the community, and causing *ten* Sheriff's and Commonwealth's Attorneys to ask for assistance from the federal government.

In addition to the lawlessness described, the defendant has incurred <u>numerous convictions for driving under suspension, driving under revocation, and speeding</u> – all occurring between March 8, 2014 and October 17, 2020. These flagrant and repetitive driving convictions demonstrate his refusal to comply with the law and with the orders of the court.

In sum, the defendant brings to this Court a series of convictions for criminal activity that are both serious and escalating in terms of their severity. He has continuously demonstrated a lack of respect for the law and for orders of the court. Although he is now 24, he has a Criminal History score that places him in Criminal History Category VI, having committed the instant offense *while under a criminal justice sentence* for felony drug distribution, felony possession of a firearm, and felony possession of drugs (see PSR at paragraphs 57, 63, and 64).

The leniency he has received from the courts, as reflected in the prior sentences imposed and suspended, has not deterred him from engaging in criminal activity, has utterly failed to promote respect for the law, and has failed to protect the public from his brazen disregard for the safety of others.

The defendant brings to the Court the history and characteristics of a person who is, simply put, unwilling to abide by the law. The defendant has failed to show any respect for the law or for the orders of the court – not even when he had the potential sentence of 10 years hanging over his head. Rather, he continued to engage in criminal conduct that endangered the community. Stated another way, when the defendant is not imprisoned, he is often engaged in serious and dangerous criminal activity. To give him yet another break will send the message to this defendant, and the Merry Point Gang that you can not only "game" the state system, but you can do it in the federal system, as well.

Considering the defendant's criminal record, which includes illegal firearms possession and felony drug trafficking convictions, his demonstrated lack of respect for the law and for orders of the court, his failure to be deterred from committing further crimes when faced with a potential 10-year sentence in state court, coupled with the very important need to protect the public, a sentence of 10 years is both necessary and appropriate. It sufficiently takes into account the reckless and volatile actions of the defendant – the seriousness of his offense – as well as the need to protect the members of the community

C.    *A Sentence of 120 Months Serves the Factors set forth in § 3553*

1.    Seriousness of the Offense; Need to Provide Adequate Punishment

The seriousness of the offense, and the need to provide adequate punishment for the offense that brings the defendant before this Court are served by the imposition of a sentence of 120 months.  In between selling firearms to a prohibited person, the defendant discharged a firearm at the Raceway Gas Station and was arrested in possession of cocaine. During the Raceway shooting, he illegally obtained a firearm, illegally possessed a firearm, loaded the firearm, and then shot the firearm, with multiple vehicles hit by bullets in the process.

After he sold a high-capacity semi-automatic firearm (the charge that he pled guilty to) that had a 30 drum magazine and 22 rounds of ammunition, he assisted the relative who had purchased the firearm in falsely reporting it as having been stolen. After he shot the firearm at the Raceway Gas Station, he possessed and sold yet *another* firearm – this time, one that had been stolen.

The evidence that will be presented at the sentencing hearing will definitively demonstrate to this Court that the defendant's history and pattern of criminal conduct required federal intervention to stop him. He is a member of a violent gang, and he is recognized as one

of its leaders. Rather than view the leniency he has been shown by the courts as an opportunity to turn his life around, he has instead been emboldened – as if the law simply does not apply to him. But there are larger repercussions that flow from his criminal conduct: many of the citizens are rightfully in fear based on the criminal activity that has taken place within their community by the Merry Point Boys Gang. The communal vulnerability that flows from the criminal activity that the defendant has engaged in causes citizens to have real and valid concerns for their safety and that of their family and friends.

One of the societal ills caused by the defendant's offense in this case stems from the reality that innocent bystanders are often harmed by the consequences of prohibited individuals possessing firearms. As this Court knows, a firearm in the hands of a prohibited gang member is a volatile combination. This defendant refuses to accept that his criminal activity must stop. A sentence of 120 months is necessary to reflect the seriousness of the defendant's conduct – and to finally provide adequate punishment for the crime that brings him before this Court.

2.   Need to Deter Future Criminal Conduct; Promote Respect for the Law

At 26 years old, the defendant is an unrepentant recidivist, with multiple convictions for serious criminal activity on his record. He has failed to take seriously the terms of incarceration that have been imposed (and suspended) in the past. A sentence of 120 months is necessary to deter him from engaging in future criminal conduct and it may promote respect for the law. To that point, the defendant committed the offense that brings him before this Court *knowing* that he could not possess firearms – yet, he not only possessed firearms, but he loaded them and sold them – and he did so while he was under a criminal justice sentence. Further, the 10+ years of suspended jail time for his prior convictions, and the thought of going back to prison for any portion of that time, also utterly failed to deter him from engaging in further serious criminal

conduct. Nothing to date has stopped him. A sentence of 120 months is therefore necessary to deter this defendant, and to promote respect for the law.

      3.    <u>Need to Protect Public from Defendant's Future Criminal Conduct</u>

The defendant was in possession of (and sold) not one, but two loaded firearms. The reality is that the older the defendant gets, the more empowered he becomes in terms of committing serious criminal activity. A sentence of 120 months' incarceration (to run consecutive to any state sentence that may be imposed, see conclusion below), will serve to protect the public, at least while the defendant is incarcerated.

      4.    <u>Need to Avoid Unwarranted Disparities</u>

A sentence of 120 months' incarceration is completely appropriate in this case. Illegally possessing and selling loaded firearms, and in between committing those crimes, shooting a firearm in a public area with bystanders and vehicles around demonstrates the defendant's reckless and volatile disregard for the law and for others. A 120-month sentence will ensure that no unwarranted disparity exists between the defendant's sentence and that of similarly situated defendant.

      5.   <u>Need to Provide Educational/Vocational Training</u>

It appears that the defendant may benefit from the various educational programs that will be available to him while incarcerated so that upon his release he will be able to become a productive member of society.

<u>**CONCLUSION**</u>

For all of the reasons set forth herein, as well as the evidence that will be presented to the Court by an FBI agent during the defendant's sentencing hearing, the United States respectfully asks this Court to find that the defendant's criminal record, and each of the relevant factors set

forth in 18 U.S.C. § 3553 (a), call for a sentence within advisory guideline range[1], specifically, 120 months' incarceration, as that sentence is necessary to address the seriousness of the offense that brings the defendant before this Court, is needed to protect and ensure the safety of the public, is necessary to adequately deter the defendant, and is one that will hopefully serve to promote respect for the law.

Finally, in keeping with the Supreme Court holding in *Setser v. United States*, 566 U.S. 231 (2012), this Court has the discretion to order that the federal sentence imposed in this case run consecutive to any anticipated state sentence, even, as here, one that has not yet been imposed. Because the defendant has multiple sentences that have been suspended in state proceedings, the entry of such an order in this case is appropriate.  The United States also asks that the defendant be ordered to pay the mandatory $100.00 special assessment and placed on three years of supervised release. The United States also asks that any forfeiture order entered in this case be made a part of the judgment and commitment order.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:  _____/s/_____
Angela Mastandrea-Miller
VSB 51070
Assistant United States Attorney
Eastern District of Virginia
919 E. Main Street, Suite 1900
Richmond, VA 23219
(804) 819-5400
Fax: (804) 771-2316
Email: Angela.Miller3@usdoj.gov

---

[1] While the guideline range in this case is 110 to 137 months, the *restricted* guideline range is 110 to 120 months' due to the statutory maximum sentence that may be imposed. Therefore, the request for a sentence of 120 months falls at the mid-point of the guideline range notwithstanding that 120-months is also the maximum sentence this Court can impose.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby affirms that a copy of the foregoing Sentencing Position of the

United States was filed with the Clerk of the Court on July 14, 2022, via the ECF filing system,

which will send a copy of such filing to counsel of record and the United States Probation

Officer.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/s/_____
Angela Mastandrea-Miller
Assistant United States Attorney